Okay, well let's call Wooten v. BNSF Railway Company. If counsel for the appellant is ready to go. Yes, good morning your honors. Jacqueline Holmes for the appellant BNSF Railway Company. May it please the court. In the interest of time this morning I'd like to begin briefly by discussing two damages related issues that is front pay and the failure to instruct on the good faith defense to The front pay award in this case is unprecedented. The district court awarded 1.4 million dollars in front pay which is right between what Wooten's expert calculated as a 30 year front pay award of 1.33 million and what the expert again Mr. Wooten's expert calculated as a front pay award of one point of for 37 years which was 1.55 million. So we've got somewhere between a 30 and a 37 year front pay award. Ma'am, this is Judge Pregerson. Can I ask you a question? Of course. So you say it's unprecedented but did BNSF do anything during the trial by way of presenting any evidence at all that the assumptions that the expert used were incorrect? So in terms of the we didn't I don't think we disputed the math Judge Pregerson and the math is. No that's not my question that's not my You didn't dispute the assumptions other than you cross-examined the plaintiffs experts. You did not present any underlying evidence that would dispute the basic assumptions about the availability of comparable work of being able to earn a comparable salary through other through other opportunities. You presented no affirmative evidence at all about the marketplace in Whitefish. You did not present any expert testimony in that regard. Isn't that correct? So I don't think that's entirely correct Judge Pregerson. I understand your point but I do think that there was evidence. No I think it is I think it is entirely correct and I think it's a key point. I think you're asking this court arguably to rescue BNSF from not conducting a you know a vigorous defense and contesting these issues. So tell me why I'm wrong. So for a few reasons so first of all Mr. Wooten has the burden on damages not the BNSF that's number one. Well of course and he put forth evidence. He did put forth evidence but I would argue that that evidence does not support the length of a. Could you just go could you answer my first question did BNSF hire an expert? So I believe BNSF did have a vocational expert who testified as to the availability of other of other jobs in the railroad jobs and otherwise and they also cross-examined. Now I'm if I'm wrong about that I apologize but I believe that's correct that there was an expert that BNSF presented. But that all that that aside again there are two fundamental assumptions underlying the front pay award here. The first is that had he not been dismissed Mr. Wooten would have stayed at BNSF for 30 years. That assumption is the only record evidence that really supports that or arguably supports that is Mr. Wooten's own subjective belief and his own subjective testimony that he wanted to stay for that length. So what more what more was he required to you know now you're making a legal argument you're not making a factual one you're making an argument that the evidence was sufficient to support the the judge's eventual determination that he would have remained there for 30 years. What more should he have introduced in your view? He said gee my father worked here all his life I intend to work here all my life too. What more should he have introduced what it what what if to meet his burden in your view what else should he have done? So I think I think judge he could have done more in terms of. Well he could have done a lot more. My question is what does the law require that he do? So I guess what I would say is if you look at the Payton case admittedly from the DC Circuit and not this circuit but it's the closest one closest one factually I could find. The court there held very clearly that employees subjective intent no matter how sincerely held is not sufficient to establish that he will stay at it he or she will stay at a job for decades and there's a reason for that that may actually makes a lot of sense because there are market forces and technological changes that impact us and that impact every industry right. Okay I understand all that I bet you still haven't responded to my question. Tell me what certainly his subjective intent in staying is a fact. If he said I was only going to stay here for another two years you'd only get another two years in front pay. So what in addition to his subjective intent because you put on no case you only cross-examined his and now you're saying his case was insufficient. Tell me what more he was required to put on in your view to make his case a sufficient case for front pay. I think in addition to his there had to be some objective evidence that that was a reasonable assumption. Okay tell me what that was. How does a plaintiff meet that burden? He could have taken discovery for example on how long folks typically stay in the jobs that's one thing he could have done and he could have put that on but I think the underlying point is there has to be some objective evidence beyond the subjective intent because there is a market forces issue here right and you cannot assist it and assume that the the world is going to be the same 30 years from now as it is today. That's the bottom line. But isn't but I'm sorry it's Judge Craigerson I hope I'm not interrupting. No. But isn't the market forces argument a double-edged sword? I mean you know to get a job that pays a hundred thousand dollars in Montana seems like a pretty unusual situation and if that's true and you can tell me if I'm wrong it seems like that certainly cuts against the argument that he was likely to leave and therefore lends credibility to his argument that this was this you know great job and you know for a guy that only had a high school education I wasn't going to be able to make no more money than than that great job doing something else. So so Judge Craigerson it certainly cuts against the notion that he would leave voluntarily. But the bottom line is you there are no guarantees that he would not be required to leave involuntarily. I'll give you an example. 30 years ago the class 1 railroads in this country employed 400,000 people. Today that number is a hundred and twenty thousand. Things change. So did you make those arguments to the jury and did your expert argue those issues? I'm sorry you didn't have an expert. Did you make the arguments that you're now raising on appeal in a factual way before the jury? So I believe that the company did argue that there were no guarantees going forward in the future. But again the reality is. Well but you're you're you're complaining about the lack of empirical data and I'm asking you whether you did a sufficient job in the trial. And I take your point Judge Craigerson and and and all I think I can tell you is that in the end the evidence of record has to support the award of front pay. And here the evidence of record does not. Merely saying I want to stay is not enough. And it's not. Your argument is that the plaintiff has an affirmative burden if he wants front pay for over a period of time to demonstrate the that it's more probable than not that he would be employed over that period of time? At a sure because and I'm not sure if more probable than not is the exact standard judge to be candid. But look damages have to be grounded in fact. They can't be based on a guess. This is a guess. And this circuit has been. I'm sorry Judge Craigerson. I'm sorry. That's fine except we you know we enter default judgments all the time. You know lawyers don't always do a great job. I just I keep coming back to the fact that you know whatever wounds you're complaining about now we're self-inflicted. And just tell me why I'm wrong. And again I think the best I can say is that he has the burden on damages. We do not have the burden on damages. He has to demonstrate that he had a reasonable probability that it's more than a guess to say that he would be with us for 30 years. And he hasn't do that. Remember that market forces don't matter in the availability of this plum job doesn't matter in this family history doesn't matter. I don't think again alone subjective intent is enough because market forces do matter. Right. I think I agree with you that market forces matter. Absolutely. And moreover so the second assumption underlying all this is that he's going to sit in place in his current job and never make any more money. And the record doesn't support that. He said himself he wasn't sure whether he would remain in the job. His expert testified to his academic abilities. His expert testified to other certificates. He had the ability to to obtain in order to earn more money. And the fact and into the possibility that he could one day own an agency. And and so if you look at all of that again what this court fundamentally has said about front pays that it has to be temporary and taking someone bearing in mind that the amount of front pay in this case was six times as long as he'd ever as he'd worked for BNSF and three years longer that he'd been alive at the time he was fired. So that's a very very long time. And if you if you look at that and you you you you track that out it's quite clear that that is not it's it's not temporary. Right. It's permanent. It's the opposite of temporary because you've taken a 30 year old and you've bridged him all the way to retirement. It's the definition of permanent. So for those reasons I think the front pay does simply does not comply with the law of the circuit and not for that reason it should be vacated. There's not much law of this circuit as I think the briefs indicate. If we were to make law of this circuit to control front pay the evidence needed to get front pay awards is there some circuits law that you suggest is the appropriate law to look to? So I don't know that there's a that I would say a particular circuit. As I said I think the closest case that I found is the Payton case from the DC Circuit which indicated again as I as I said that the subjective intent is not enough to bridge someone to retirement. If you also at the case law as a whole it is extraordinarily rare if ever to bridge a 40 year old to retirement much less a 30 year old to retirement for front pay. Again bearing in mind that it's an equitable remedy. Right. Another thing I'd like to say on this just to just to be clear so what the statutory text says here is that the damages award is supposed to make the employee whole. This because it insulates it insulates Mr. Wooten from all market forces technological changes in the railroad industry etc. and guarantees him a four percent annual increase for the rest of his career. Somebody working for BNSF today does not have those guarantees. It's like he was a federal judge. So it takes it goes far beyond what what is required under the statute to make Mr. Wooten whole. Shifting if I can if there are no further questions on that to the failure to instruct on the good faith defense for punitive damages. I think this raises two questions and the first is whether the Polstad defense applies under the FRSA at all and if so whether it was reversible error to refuse to give it here and I think the answer to both of those questions is yes. It is true that the Ninth Circuit has not ruled one way or the other whether the good faith defense to punitive damages is a defense under the FRSA. It's not been called upon to do so and it hasn't. The cases and the circuits that have been called upon to answer that question have answered it affirmatively. So the Eighth Circuit in the BNSF versus Department of Labor case applied the good faith defense to people to fold there that there should be no punitive damages as a matter of law and the Department of Labor's administrative review board which is the last word within the Department of Labor on these issues has also held that the good faith defense applies. Assume that it does. Assume that it does that the Colstead instruction is appropriate and the facts of this case is inappropriate. It appears that lots of senior-level officials in the so it's you know if the president of the company decided to fire him would would the Colstead instruction be appropriate? So I think if it were at that level if it were the CEO perhaps not. I think well here we have at least evidence of director of administration for Montana, the director of labor relations, the Montana division general manager, and the regional vice president were all to fire him. That's right judge and I think that's part of the point right that there is oversight built into this and that that could be viewed by a jury a fair jury as evidence that BNSF is making good faith efforts to prevent retaliation right they're not just letting their managers go off and do things willy-nilly. Now I want to be clear though the director of a director in labor relations is not the top person in labor relations it is somebody who again on the facts under how BNSF system works it's not the top very top person. Right but but Johnson and Johnson talks about somebody said that the rule doesn't the rule doesn't do away with the notion that the corporation is responsible for the decision of somebody sufficiently senior. It does and I think it also says that that is generally speaking a question of fact. So I think that's something that should have gone that could have gone to the jury. The jury certainly could have been instructed that if they determined that these folks were sufficiently senior that the defense didn't apply but that doesn't mean that the defense doesn't apply out of the gate. Again here you have very clear evidence of anti-retaliation policies you have evidence of training you have evidence of again senior oversight which is in many ways a good thing right. Obviously everyone disputes here whether that worked but whether but that's not the question. The question is whether there are enough facts in this record to raise a fact issue on that should have gone to the jury on the good faith defense and I think they're clearly are. I don't think that these the individuals involved are so senior particularly regional vice president. How about the regional vice president? Yeah I don't I don't think that that is sufficiently senior as a matter of law and I don't know the regional but but sorry I'm Judge Gregerson the regional vice president was involved as well. That doesn't strike you as sufficiently senior? It doesn't and particularly because Judge Gregerson. What about the law department being involved as well that's in the record. It is in the record yes but again I think a jury could just have easily just as easily have viewed that as evidence of BNSF's good faith efforts to comply. So do you think a jury gets to decide whether the person is sufficiently senior or is that a legal question? Is that a legal question? I think it's probably a mixed question of law and fact judge but I confess I haven't thought about in a lot of detail the reality here is the judge didn't make that determination he just said I'm not giving the instruction and he didn't say why. He didn't say you wouldn't be entitled but you wouldn't be entitled to the instruction under our case law if a person sufficiently senior in the corporation was what had made these that the regional vice president or the Montana division general manager are sufficiently senior? Again I don't think that would be the right outcome but I think theoretically yes. I mean of course theoretically you could determine that but bear in mind that if that happens then what you're doing is discouraging BNSF from exercising this oversight because what you're telling them is if you exercise oversight you're not going to have a defense to punitive damages. What we're telling them I guess is assuming that outrageous this firing was outrageous what we're saying is that if a senior person justifies approves outrageous determinations you're not going to have a good faith defense. And and again of course the the company doesn't view it as outrageous. Yeah I understand. Okay in any event I think I do think that in this case it was appropriate to give a Kolstad instruction and district court erred by refusing to do so. I was just gonna say you're down to two minutes but do you have another and you've covered both issues you said you wanted to be sure to cover what what else do you want to tell us? So I would like to speak to the merits but obviously there's there's a lot there so I will just try to be brief about it and of course answer any questions. I think the problem in this case is that it's difficult to believe at least in my view that the jury could possibly have gotten this right given the fact that the two kids that the two claims were tried together and that certain instructions particularly as to honest belief and business judgment which were clearly correct statements of the law were not given. The FBLA injury case asked the jury to decide what actually happened in the case what actually happened with regard to the how it happened whether it happened at work or not through the lens of several years of investigation and with the benefit of experts. Can I ask you one question on this this goes to the bifurcation issue so what were you was the company envisioning in paneling two totally separate juries to hear the evidence on each claim? Yes. Okay that just makes to me no sense given the amount of overlap how we would say that that was an abuse of discretion by the jury. It's well beyond anything I'd be prepared to say. And I understand and I appreciate that Judge Watford I think the reason though that that we think that it was is because there was prejudice to be NSF in the end because it is impossible to believe that a jury and this is with all respect to the jury I want to be clear right I'm not blaming the jury here but it's impossible to believe that a jury composed a who has just decided what actually happened with regard to the FBLA case then can turn around and forget about that and set it to the side completely which is what they would have to do to do this fairly and look through the perspective of BNSF management to see what information they had in front of them and whether they honestly believed that there was that that Mr. Wooten was lying based on the information they had in front of them. But then what you're arguing it seems to me is that when these two kinds of I don't I don't think that's quite what I'm saying I think in this type of case it was important and I think again I might be having a different discussion with you if if the honest belief instructions were given and the and the business judgment instructions were given because I think that would have at least helped the jury understand the legal framework and the whole premise of not bifurcating this claim this case was that a whole of these instructions were going to be given that then really don't fit them right so I think I think that's the I'm not saying the judge has no discretion I'm also not saying by the way that this is the case in every FBLA FRSA case that's not what I mean but I think here where the question is a false it involves a false injury report and an FBLA claim you're asking the jury to decide in the with regard to the FBLA claim what actually happened and then you're turning around and you're asking the jury to decide on the other hand what the company honestly believed and that's really tough to get right it is and and I don't think the instructions here give any confidence that the jury did get it right okay thank you counsel we'll give you a couple of minutes for a vote thank you here from counsel for the plan thank you your honors behalf of mr. whoop my name is bill young Bauer and I think at the outset I would like to as an overview request that the court review the case of D Francesco that has been cited and the reason I mentioned that it's that case D Francesco BUP and the reason that's so important is is under this whole statutory framework these cases start out under OSHA can I ask you counsel which issue are you focused on initially initially what I'm that was an overview of the issue I'll focus on initially your honors I'll go back to the issues that counsel brought up and I'll say that I disagree with her first of all on the on the necessity of the Colstead instruction number one I think the trial court in its opinion got it right that in this in this jurisdiction in the Ninth Circuit the the Colstead instruction has not been found to apply to FRSA cases more importantly what the judge did is he took the Ninth Circuit instruction used it which has most of the operative language of the Colstead instruction but most importantly in addition to that is the decision makers that BNSF identify in their brief and I don't necessarily agree that BNSF gets to identify as a matter of law who decision makers are but going beyond that they have identified to this court that Miss Maglisco Mr. Franzen and I believe the VP were decision makers well that the item to know here the key fact is that the accident report was one of the there is and Mr. Franzen also reviewed it there is no dispute that the decision makers in this case were aware of the protected activity so that's why Colstead frankly the whole issue of there is irrelevant here because it's already admitted that the decision makers designated by the railroad who are the ones high enough up to review this had knowledge of the protected activity and in addition to what the court has said not only that but Miss Maglisco then presented evidence to the what's called PEPA board and what the PEPA board is is the COO the number two person at BNSF plus a bunch of vice presidents who review her findings it can't get any higher than that but what the railroad has set up itself for its for its hierarchy of decision makers of those with authority to make these decisions is that someone like Miss Maglisco someone like Mr. Franzen who was the top operating officer for Montana Division that's it and then Mr. Randall the VP oversees him that's as high as it gets there's nothing higher for their whole system that they've set up so so that's the first thing secondly I would point out that if a close reading of Colstead and I read it a number of times I had some trouble with it because Colstead as you know the different justices shifted around from the first from part the first part to the second part but most importantly on on the part to be of that opinion where they're talking about this whole issue they make a decision and say we're not going to follow the restatement of agency because we're going to make special adaptations for the intentions of this law and thus for something to apply to the FRSA we really need to look at the FRSA and the FRSA again if we look specifically at the statute what it provides for is it's very it's very specific it says under part a a railroad carrier engaged in interstate or foreign foreign commerce a contractor or subcontractor of a railroad carrier or an officer or employee of such railroad carrier may not discharge demote suspend reprimand or in any other way discriminate against an employee if such discrimination is due in whole and in part to the employees lawful good faith act done or perceived by the employer to have been done or about to be done the reason that's important that language is this good faith belief is a misstatement of law under the FRSA because it's only the plaintiffs belief good faith belief that has anything to do with this statute if we read it and so the whole issue about how and what under what not to be liable for damages comes under there under the the under the burden of proof section where which is the I've been brought up by four two one two one which shows under under part two notwithstanding a finding by the secretary that the complaint has made a showing required under clause one no investigation otherwise required under subpart a shall be conducted if the employer demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior we're talking here about we're talking here about a punitive damages instruction not a compensatory so so is it your position is that is that there's something in the FSRA which means we shouldn't import the Kolstad instruction into it for punitive damages and if so what is there what if if you import the Kolstad instruction and give the operative language and compare that to the instructions this court gave they're the same the only part of the Kolstad instruction is the question of whether or not under agency theory the decision makers in this case were high enough to bind the corporation if you look at the Palantino case from this circuit and that's the case that was talking about Johnson and Johnson yes if you if you look at that they they they go into that and they they they do a good analysis that I think supports the analysis of the trial court in this case so I don't see a I don't think that the instruction the Kolstad instruction itself can be brought over unless we look at the purposes and objectives of the of the FRSA as compared to title 7 and they are different because the FRSA specifically says don't fire somebody for turning in an accident report and that is a if you read again that DeFrancisco case I was reporting that identifies the fact that OSHA considers the filing of an accident report to be I'd like to find their exact language almost like a super protected right because it's so important and so basic to the reasons and purposes of the FRSA so that in this type of case with these facts to have an employee turn in an accident report and then be fired for it and if we go if we go back to the so under Kolstad we know we've got the right person we don't have to have a separate instruction because BNSF has already identified who the management people are sufficient to make these decisions under their process can I ask you to can I ask you to because I know you've got limited time address the front pay award for me and let me let me just give you an overview and I I agree with almost everything that Judge Pregerson said before about the absence of contrary evidence in the record but this appears to be the longest front pay award in any reported case in the United States and if it's not it's darn close and it's 30 years for a relatively young man and it's as if he had tenure at a major university so tell me I mean at some point isn't to some some number of years just too long well your honor that is the the evidence of the court heard was not just the intention of the that he was accumulating seniority and seniority is like tenure along the more seniority you get as a railroad worker you can work for better paying better condition jobs he loved the job and intended to want to work there there was no evidence from the vocational lady called by the by BNSF no one disputed that he was going to and had the capacity to work to retire to retirement his grandfather had done it he was doing it and there was no dispute and the reason as counsel use the term market forces under market forces where is a guy with a high school education going to get $100,000 a year job from an what was the evidence on that on that latter point what was the evidence that the employer has to have your guy as opposed to someone doing his job well your honor it's seniority the seniority system somebody doing his job it's the the evidence was that the the vocational experts our vocational experts said that he had a work-life expectancy of you know between 60 and 67 and she's got experience having looked at all of this and the and the not only the seniority protections but the the ability of him to do the job he had no prior discipline of any type and so and the other thing to show that this was a fair and and reasoned up front pay award working at the end at the insurance agency the boss of that insurance agency testified and he said that the numbers that we used were accurate and reasonable for somebody with his ability and his credentials in the industry the owner said that even though he was thinking of mr. Wooten so there's no there's no reasonable expectation that was going to be able to even keep that job that he has but we deducted that amount for the whole time and I'm sorry that it's four years but they fired a guy and if we had gotten into statistics we could have shown how long railroad workers work but it was undisputed they had their vocational lady who didn't say it's speculative and for any jobs that the vocational lady for the railroad came up we asked her can you tell us is it reasonable to expect he'd actually be able to be placed or get one of those jobs and she wasn't able to do that so their whole deduction for mitigation was speculative ours we made a deduction and the job he could get was the best one in that economy that he could get that's why it's fair no and I wasn't it let me just be more specific I'm not questioning in my question now the the other job in the comparison what I'm questioning is because front pay is supposed to be a temporary remedy does there come a point in time where where a court should just not allow it to go on for the rest of somebody's working life over 30 years well your honor the judge Christensen actually addressed that and when he says when he went through his whole discussion of whether this is a legal or equitable remedy in his opinion right and he said he said I think it's equitable so I better rule because if it was legal I would have left it up to the jury well but I think he's right and the reason he's right is because to give all enforcement to the intent of Congress and this statute it says that the purpose is to make the employee whole how do we make them whole if he's got a $40,000 a year deficit in what he can earn anywhere in the state of Montana based on the evidence before the jury we can't and so the only way even giving the benefit to the railroad of assuming he's going to have that insurance job forever he's got that loss it's a demonstrated loss and that doesn't even build in and the four percentages that were built in by the economist was based on historical numbers and he also did a which might be laughable in today's a world because we know that you can't count on so much interest but so the real deal is to give full effect to the intent of Congress this needs to be done and if you read the statute again under the remedies what it says it's what it says under under this under the statute is the types of damages that an employee can recover but it says in the very beginning under part one in an employee prevailing in an action under subsection shall be entitled to all relief necessary to make the employee whole judge Ferguson isn't the the concept that it's meant to be equivalent of reinstatement and that the railroad rejected reinstatement yes and it is and that's what the court found and in fact if they reinstated him you know this this would be we might not be here but they didn't want to reinstate him and because of the animosity that was shown where the railroad continually all of these officials called him a liar in front of his family who were in the court they publicly said a liar and they're not going to take him back to him when they've got rules that they can interpret however they want to they could fire them for being immoral they could fire them for being dishonest with no definition of dishonesty they've got so many of these general vague rules which is another whole problem but it's not reasonable to expect that a they would take back or be that he if he went back that they wouldn't do it again to him he wouldn't be able to work there can you go back for a second because this would be this is useful to me and tell me again what evidence besides his testimony that he would remain there supports the the judge's determination that he would remain in this job for 30 years again and I'm kind of doing this off the top of my head his testimony not only of intent his testimony of the other workers that he knew personally had been there their whole life in other words his grandfather that his grandfather had provided a good life for his family through that job that he wanted to provide a good life for his family through the same type of job that it was what was it let me ask more question what was the what was the record evidence about seniority and its effect there's there was testimony and I'm doing this off the top of my head your honor because I didn't I didn't go through the record I didn't find anything that said because he was senior he was entitled to stay well you're not you're entitled what seniority does in a union is you can't be you're not an at-will employee you can't be let go for no reason okay and tell me what tell me what's in the record about that that's what I'm trying to figure out all I can recall and say honestly is that he was a seniority we described seniority system how it works that the more seniority you get the better jobs you can get and the more paying the more preferable jobs you'll have what was the evidence let me ask a more specific question what was the evidence in the about the effect of his union membership on the ability of the railroad to terminate him I take it I take it they can only terminate him for cause right yes or under their procedures yeah it's not an at-will it's not an at-will position okay but I mean obviously they could have layoffs that's another issue is there anything was there anything in the record about that is what I'm asking without going back and looking I assume so I believe so and I'd have to go look your honor because I wasn't asked because that is such a it's a thing that if if they had raised the issue we would have got statistics from the railroad retirement board of how long these guys work based on their actuarial tables we didn't need it but we would have had it I mean railroad workers on average work longer than almost anybody else in the same industry in the country that was that specific statement wasn't made but we all know it which is why it wasn't disputed by the railroad or their experts when when our guy has an uh or when when the plaintiff makes the affirmative statement I'm going to work this long when the economist relies on that and when the vocational uh person for us says yes he's going to work that we believe he'll work that long because that's the best job he could get with this education training experience that under the market force argument that councils made uh shows that he more likely than not would have and the again the economist testimony if you go back to that you will see what all he relied on and why he did it I mean he looked at all of these items and was subject to cross-examination and there was if there was something in the record that that council could point to I believe it'd be in the record to show that uh this uh how long he was going to work what was an issue that wasn't even an issue in the case what they did say is that he shouldn't get a 40-year quote annuity and it's not an annuity it's what the loss to him is if they could show or would have shown uh that it's more likely than not that he could have got a job to earn more money uh doing anything else it would have been in the record and you would see it the best job he could get uh was the railroad job the second best job in the record that he could get now or in the future was the insurance job that's the evidence okay thank you council you're well over your time now I'm sorry about that no you were answering our questions very helpfully thank you um let's put two minutes on the clock for uh for rebuttal um for council for the railroad thank you your honor uh just briefly so first on kolstad I would note that in the pasatino case the johnson and johnson case one of the one of the um employees at issue was a was um an employee who was the head of the office where the plaintiff worked and those individuals were not held as a matter of law to be um sufficiently senior that they should that they would ultimately prevent the good faith defense in fact the court remanded for for further fact finding on that um so that's that's point one on pasatino another point though that I think is important here is we don't know uh based on the instructions that were given what level of employee the jury found acted with malice we don't know we don't know if they found that it was the vp or if we if they found that it was james pinot who ran a single site within montana in bnsf's 32 000 mile system um and the reason we don't know that is because they weren't specifically asked that question of course but we also don't know that because no cool static good faith defense instruction was given and had it been given and of course the jury could have been instructed on the sufficiently senior point then we would know right um so i think that's on on colstad and then on front pay all i would say is that what you have here is fundamentally a subjective intent to stay in the job which is not and should not be enough to grant a 30 year old 30 years of front pay again this court has been clear that front pay is supposed to be temporary this is the opposite of temporary even in gothard where you were awarded 11 years of front pay under very specific circumstances the court noted that that was generous are there circumstances that you can envision in which somebody would be entitled to a 30 year front pay award as an equitable matter probably not judge but if i think that i think if there were such it would be more along the lines of what you see in gothard where you had somebody who was unable to work because of the employer's misconduct right they were physically unable to work because in that case the employee had ptsd and she was bridged to retirement for 11 years something the court that called generous and that was 30 of what mr wooten got here where and he's an able-bodied individual who has high abilities right he quoted scored very highly highest possible scores on the aptitude test is that he's expert administered so it's completely not comparable in the bohm case another example the court awarded six years of front pay and said that that was longer than is generally awarded under federal discrimination laws here are five times i mean boiled down i guess i understand your argument just to be that pretty much as a legal matter as a matter of law 30 years is just too long no matter really what the circumstances are because i don't know it's just too speculative to to game out that far into the future so i do think that's right judge but i would caveat it with on this record with an able-bodied 30 30 year old etc it's simply not warranted well i i guess the reason i'm asking that is it seems to me if we were ever going to uphold a 30-year front pay award the facts in this case are pretty damn strong for the plaintiff the only other thing for i suppose that the plaintiff could have put on was some kind of statistical evidence about you know how how often do folks at his age uh in fact remain with the same railroad for the rest of their career um you know maybe it would be a high number maybe it wouldn't but short of that i i don't really know what else from an economic standpoint um you could put on to persuade a jury or to persuade a judge sitting in equity that this is a pretty good prediction i mean we can game out pretty uh with a fair degree of assurance as to what the the rest of this person's working career would have looked like so i think you can game it out in terms of the math right but i don't think you can game it out in terms of what the industry is going to look like your guess it's a guess as to what the industry is going to look like 30 years from now it's a guess but aren't you aren't you then just asking judges to um get involved and sort of micromanage these trials on economic issues second guest juries second guest judges you know i mean really what you're saying is draw a bright line somewhere and this is just too far because it is i don't think it's because it is judge i think i think it's because again it's a guess the man isn't always a guess i mean even when you have experts speculating or a guess so what if what if you were a college and he were a tenured professor and he were 30 years old and he wanted to stay there until he was 65 um would he then be required to put in evidence that gee sometimes colleges fail or departments get reorganized and um i mean i'm trying to figure out what evidence you what i take it your point is really that no amount of failed to put in the appropriate evidence is just that no amount of evidence could ever justify it so no amount of evidence ever has i think but there's been a 27 out there that's that's right although that was under state law that wasn't a federal claim right and it wasn't to a 30 year old again if the notion that front pay is supposed to be temporary means anything this is out of bounds if it doesn't mean anything then then i guess we can say that but if the notion that it's supposed to be tempered to avoid windfall and it's supposed to be temporary means anything then it shouldn't be upheld here if it were a 10-year award would you have the same arguments i haven't thought through the exact point at which i mean i might make the same arguments because certainly one to three years is the norm and it's the typical especially again the only federal case the only nine circuit case i know of and it's a federal claim is gothard which was 11 but which the court really focused on very specific circumstances you had a 59 year old who they bridged to retirement and they did it because she had been at the company at the railroad longer than mr wooten had eight or nine years so it was it was roughly comparable to the length of time she worked there and she had it she had post-traumatic stress disorder that was specifically caused by the railroad's conduct those were the findings in right and there the court i think with some reluctance i mean said look it's generous but we're going to do it in this case on these facts you don't have anything like that here but but but doesn't it sort of come back to this problem that you know it invites gamesmanship the other way also where the railroad says look we're not going to put on any evidence at all disputing what the long-term employment status is of people we're not even going to do that because we don't like it and we'll just do nothing or put on a minimal case and then we'll argue that it's excessive as a matter of law i mean isn't that of equal concern to your argument that um you know that it's too quote speculative or too long judge i guess i guess what i would say about that is there's always some risk when one party has the burden of proof and the other one and another one doesn't that the one party but couldn't you have eliminated that burden of proof issue by putting on evidence potentially i mean certainly perhaps the railroad could have put on more evidence here than it did but i don't think that answers the question right which is whether or not fundamentally we're going to allow a 30 year old to be bridged all the way to retirement for 30 plus years of front pay as an equitable remedy again no court's ever done it that i know of but we we do things like that all the time where we speculate about the length of injuries the length of employment i mean we do the best we can with the evidence that we're presented with and i guess i just i'm unaware of any way that we would formulate a bright line on these issues other than sending something back and saying well we don't like it try again and i guess i guess to say there's an absolute bright line it's it's x years or y years maybe that is difficult but the reality is that here the only evidence supporting the length of time is subjective intent and that can't possibly be enough okay thank you counsel we appreciate the arguments from both counsel in this case the case just argued is submitted and we are in recess for this for today thank you thank you judge
judges: Watford, Hurwitz, Pregerson